# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CHRISTIAN BORDA,

*Plaintiff*,

v.

U.S. DEPARTMENT OF JUSTICE, CRIMINAL DIVISION,[1]

*Defendant*.

Civil Action No. 14-229 (RDM)

## MEMORANDUM OPINION

In 2013, Plaintiff Christian Borda filed a series of requests for records with the Executive Office for the United States Attorneys ("EOUSA") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. Borda sought disclosure of records pertaining to grand jury proceedings before this Court, as well as records relating to his 2010 conviction for conspiracy to commit a narcotics offense. After the EOUSA failed to respond to his requests, Borda, proceeding *pro se*, filed this action. Dkt. 1. The EOUSA, in turn, informed Borda that a search had not revealed any responsive records, Dkt. 28-3 at 3

---

[1] The U.S. Department of Justice is substituted for the Executive Office for United States Attorneys ("EOUSA") as the proper defendant. The EOUSA asserts that its efforts to search for records responsive to Borda's Freedom of Information Act requests revealed that those records would be in the "custody and control" of the Criminal Division of the U.S. Department of Justice, and that it thus referred the FOIA request to the Criminal Division. *See, e.g.*, Dkt. 28 at 1 n.1; Dkt. 15-1 at 3 (Kelly Decl. ¶¶ 8–9). Borda objects to the substitution, arguing that he "seek[s] relief predicated upon [the] EOUSA's non-compliance with FOIA response mandates," Dkt. 31 at 17 n.1 (Borda Decl.), but the EOUSA had no responsive records and, even if Borda "is correct" that the EOUSA failed to forward his FOIA requests to the appropriate agency in a timely fashion, that "delay does not entitle [him] to any records" and "has no legal consequence in this case," *Gordon v. Courter*, 118 F. Supp. 3d 276, 285 (D.D.C. 2015); *see also House v. U.S. Dep't of Justice*, 197 F. Supp. 3d 192, 199–200 (D.D.C. 2016).

(Cunningham Decl. ¶ 8), and then moved for summary judgment, Dkt. 10.  Borda did not oppose the EOUSA's motion, but, instead, moved to amend his complaint.  Dkt. 20.

On August 28, 2015, the Court denied the EOUSA's motion for summary judgment and granted Borda's motion for leave to amend.  *See Borda v. Exec. Office for the U.S. Attorneys*, 125 F. Supp. 3d 196 (D.D.C. 2015) ("*Borda I*").  The Court concluded that the "EOUSA's evidence [in support of its motion]—even taken as undisputed—d[id] not establish that it [had] conducted a search that was reasonably calculated to discover the documents [Borda] requested," and, accordingly, held that the "EOUSA [wa]s not entitled to summary judgment."  *Borda I*, 125 F. Supp. 3d at 199–200.  The Court permitted Borda to file his amended complaint, *see id.* at 200; Dkt. 22, and the EOUSA forwarded Borda's FOIA requests to the Criminal Division of the Department of Justice ("Department"), *see supra* n.1.  After performing a search, the Criminal Division released several pages of responsive records to Borda while withholding others, Dkt. 28-3 at 5–7 (Cunningham Decl. ¶¶ 13–17), and the Department renewed its motion for summary judgment, Dkt. 28.  For the reasons explained below, the Court will grant in part and deny in part the Department's renewed motion.

## I.  BACKGROUND

Borda's amended complaint challenges the Department's responses to four FOIA requests he filed in 2013 and 2015.  Three of the requests—dated, respectively, November 4, 2013, November 5, 2013, and March 24, 2015[2]—sought information related to the grand jury proceedings that resulted in the criminal charge against Borda for which he was later convicted.  Dkt. 22 at 2–4 (Am. Compl. ¶¶ 6, 8–9, 13) (referencing *United States v. Borda*, 07-cr-065).  The

---

[2]  Borda's amended complaint states that he filed this FOIA request on February 28, 2015, *see* Dkt. 22 at 4 (Am. Compl. ¶ 13), but the copy of the request that he attaches as an exhibit reflects a filing date of March 24, 2015, *see id.* at 24–25; *see also* Dkt. 28-1 at 4 n.3.

requests, for example, sought the "disclosure of the dates that the grand jury convened," whether

the grand jury "was summoned pursuant to Fed. R. Crim. P. 6(a)," the name of the judge "who

supervised the [g]rand jury," and "all grand jury records in the public domain that are ministerial,

or do not affect secrecy." *See, e.g.*, *id.* (Am. Compl. ¶¶ 8, 9, 13). Borda's November 4, 2013,

request also sought copies of his arrest warrant, as well as copies of the "contractual cooperation

agreements between the government and government witnesses related to" his criminal case. *Id.*

at 2 (Am. Compl. ¶ 8). Borda's fourth request—dated November 20, 2013—sought information

related to the grand jury proceedings "from case No. 10-243 filed in the U.S. District Court for

the District of Columbia."[3] *Id.* at 3–4 (Am. Compl. ¶¶ 11–12).

The Department "construed" Borda's requests "as seeking substantially similar records

and information," and on October 6, 2015, it forwarded a single "FOIA search request" to the

"Narcotics and Dangerous Drugs Section" ("NDDS"), the section within the Criminal Division

that was "responsible for the criminal prosecution" of Borda's case. Dkt. 28-3 at 5 (Cunningham

Decl. ¶ 13). NDDS personnel identified "approximately [seventy] boxes of records . . . located

in their archives" relating to Borda's criminal case, and "personnel familiar with [Borda's case]

searched for and reviewed the archived records for any responsive materials." *Id.* at 6

(Cunningham Decl. ¶ 13). Over the next three months, the Department forwarded a series of

responsive records to Borda including his indictment, his arrest warrant, and a "publicly

available" "plea agreement document" for one of the co-defendants in his criminal case. *Id.* at

---

[3]  The Department performed a search of the "PACER Case Locater" for "Case No. 10-243," but
notes that "[t]here does not appear to be either a criminal or civil case captioned 10-243 filed in
the District of Columbia involving [Borda]." Dkt. 28-3 at 3 (Cunningham Decl. ¶ 7 n.1). The
Court's own PACER search reached the same result. Borda's opposition brief does not respond
to the Department's assertion and, indeed, never mentions the November 20, 2013, FOIA
request.

6–7 (Cunningham Decl. ¶¶ 14–16).  However, citing FOIA Exemptions 6, 7(C), and 7(D), the

Department "withheld in full" four plea agreements that related to "persons who later testified as

witnesses on behalf of the [United States]" in Borda's criminal trial and were "filed under seal."

*Id.* at 7–12 (Cunningham Decl. ¶¶ 17, 19, 22–23, 27–28).

The Department now renews its motion for summary judgment, asserting that it

"conducted a reasonable search of agency records;" that it "disclosed all non-exempt responsive

records;" and that it did "not improperly with[o]ld any responsive records."  Dkt. 28-2 at 1.  It

supports its motion with two declarations from John E. Cunningham III, a trial attorney assigned

to the Criminal Division's FOIA and Privacy Act Unit, *see* Dkt. 28-3 at 1 (Cunningham Decl.);

Dkt. 33-1 (Second Cunningham Decl.), as well as a *Vaughn* index describing the four withheld

plea agreements and the reasons they were withheld, *see* Dkt. 28-4 at 28–31; *Vaughn v. Rosen*,

484 F.2d 820 (D.C. Cir. 1973).  Borda opposes the Department's motion, arguing that its search

was inadequate; that it improperly invoked Exemptions 6, 7(C), and 7(D); and that it failed to

perform a proper segregability analysis.[4]  Dkt. 31 at 4–11.

## II.  LEGAL FRAMEWORK

The Freedom of Information Act is premised on the notion that an informed citizenry is

"vital to the functioning of a democratic society, needed to check against corruption and to hold

---

[4]  Borda's opposition brief does not appear to challenge the Department's contention that it fully complied with its obligations under the Privacy Act, *see* Dkt. 28-2 at 5–6, and for good reason. Subsection (j)(2) of the Privacy Act permits the "head of any agency" to "promulgate rules . . . exempt[ing] any system of records within the agency" from the Act's disclosure rules "if the system of records is . . . maintained by an agency . . . which performs as its principal function any activity pertaining to the enforcement of criminal laws."  5 U.S.C. § 552a(j)(2).  In accordance with this statute, the Attorney General has exempted "[c]riminal [c]ase [f]iles" from disclosure.  28 C.F.R. § 16.81(a)(4).  Because the records Borda seeks relate to his criminal prosecution and the criminal prosecution of others, his requests for disclosures under the Privacy Act fall within this exemption.

4

the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). It thus mandates that an agency disclose records on request, unless they fall within one of nine exemptions. "These exemptions are explicitly made exclusive and must be narrowly construed." *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011) (citation and quotation marks omitted). As relevant here, FOIA Exemption 6 protects information about individuals in "personnel and medical files and similar files" when its disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemptions 7(C) and 7(D) protect from disclosure "records or information compiled for law enforcement purposes," but "only to the extent that" disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C), or "could reasonably be expected to disclose the identity of a confidential source . . . [or] information furnished by a confidential source," *id.* § 552(b)(7)(D).

FOIA cases are typically resolved on motions for summary judgment under Federal Rule of Civil Procedure 56. *See, e.g.*, *Shapiro v. U.S. Dep't of Justice*, 153 F. Supp. 3d 253, 268 (D.D.C. 2016). To prevail on a summary judgment motion, the moving party must demonstrate that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In a FOIA action, the agency may meet its burden by submitting "relatively detailed and non-conclusory" affidavits or declarations, *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quotation marks and citation omitted), and an index of the information withheld, *Vaughn*, 484 F.2d at 827–28; *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998). The Court reviews the agency's decision *de novo*, and the agency bears the burden of sustaining its action. 5 U.S.C. § 552(a)(4)(B).

### III.  ANALYSIS

**A.      Adequacy of the Department's Search for Responsive Records**

Borda lodges three objections to the Department's search for records responsive to his

four FOIA requests.  First, Borda accuses the Department of "fail[ing] to show that [it] searched

for and reviewed any of the documents/information described in [his] FOIA request letters dated

September 27, 2014, and October 3, 2014."  Dkt. 31 at 4.  But as Borda acknowledges, his

"amended [c]omplaint failed to include any allegations of agency non-compliance with respect

to" either of those two requests.  *Id.* at 13 n.2.  Because Borda's operative complaint does not

challenge the Department's response to these FOIA requests, he cannot, for the first time, attack

the sufficiency of the Department's response by way of his opposition brief.  *See Singh v.

District of Columbia*, 55 F. Supp. 3d 55, 70 (D.D.C. 2014) ("It is axiomatic that a party may not

amend his complaint through an opposition brief." (quotation marks omitted)).

Next, Borda argues that the Department has not shown that its "purported[]" search "was

reasonably calculated to uncover all documents/information responsive" to his multiple FOIA

requests.  Dkt. 31 at 5.  "An agency has an obligation under FOIA to conduct an adequate search

for responsive records."  *Ewell v. U.S. Dep't of Justice*, 153 F. Supp. 3d 294, 301 (D.D.C. 2016).

The adequacy of an agency's FOIA search "is judged by a standard of reasonableness,"

*Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984), and "[a]n agency

fulfills its obligations . . . if it can demonstrate beyond material doubt that its search was

'reasonably calculated to uncover all relevant documents,'" *Valencia–Lucena v. U.S. Coast

Guard*, 180 F.3d 321, 325 (D.C.Cir.1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542

(D.C. Cir. 1990)).  "In order to obtain summary judgment[,] the agency must show that it made a

good faith effort to conduct a search for the requested records, using methods which can be

reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C.Cir.1990).  The agency can show that it conducted an adequate search by relying on "[a] reasonably detailed affidavit [or declaration], setting forth the search terms and the type of search performed, and averring that all files likely to obtain responsive records (if such records exist) were searched." *Id.*

The Court concludes that—subject to one qualification discussed below—the Department performed an adequate search for records responsive to Borda's FOIA requests.  First, the Department forwarded a search request to the NDDS for processing because, as the "[a]ttorneys employed [in that section] were responsible for [Borda's] criminal prosecution," it was "the particular section within the [Department] likely to maintain responsive records."  Dkt. 28-3 at 5 (Cunningham Decl. ¶ 13).  Then, "[s]hortly after receiving the search request" from the Department's FOIA/Privacy Act unit, "NDDS personnel familiar with" Borda's criminal case physically searched through and reviewed "approximately [seventy] boxes" of related records which "were located in [NDDS] archives."  *Id.* at 6 (Cunningham Decl. ¶ 13).  As the Cunningham declaration explains, the Department reasonably directed its search efforts at the division and the personnel most familiar with Borda's criminal case, and those personnel, in turn, performed a physical search of the location where responsive records were likely to be retained. Borda challenges Cunningham's description of the search as "conclusory," Dkt. 31 at 5, but the Court disagrees.  The Cunningham declaration explains who searched for responsive records (NDDS personnel familiar with Borda's criminal case), where they searched for responsive records (the NDDS archives), and the specific records identified and reviewed (seventy boxes of documents pertaining to Borda's criminal case).  Borda offers no further reason why the Court

should not rely upon this "reasonably detailed, nonconclusory" declaration, nor does he dispute

that Cunningham "submitted [it] in good faith." *Weisberg*, 745 F.2d at 1485.

Borda argues, however, that the Department "improperly construed" his multiple FOIA

requests as "seeking disclosure of 'substantially similar records and information.'" Dkt. 31 at 4

(quoting Dkt. 28-1 at 4 (Def.'s SUMF ¶ 10)).  This error, Borda argues, led the Department to

"search for responsive records using descriptive terms . . . that [were] narrower" than his actual

requests, and hence were "more likely to result in the exclusion of responsive materials." *Id.*

Borda point outs, for example, that the search request that the Criminal Division forwarded to the

NDDS did not include his request for "all grand jury records in the public domain that are

ministerial, or do not affect secrecy," *id.* at 5 (quotation marks and alterations omitted), a search

term that was part of his March 24, 2015, FOIA request, *compare* Dkt. 28-3 at 5–6 (Cunningham

Decl. ¶ 13) (listing the eight search terms included in the Criminal Division's search request)

*with* Dkt. 22 at 25 (Borda's March 24, 2015, FOIA request).  The Department responds that

"NDDS staff thoroughly searched the seventy boxes that related to [Borda's] criminal case," that

"there are no other locations that can be searched that would be likely to yield more responsive

information," and that it was not "necessary [for it] to conduct searches for each of his multiple

requests." Dkt. 33 at 6.

Based on the existing record, the Court cannot conclude that the Department is entitled to

summary judgment on this issue.  The Department has not adequately explained how its decision

to consolidate Borda's four FOIA requests into a single "search request"—to the exclusion of at

least some of Borda's specific search terms, *see* Dkt. 31 at 5—was "reasonably calculated to

uncover all relevant documents," *DeBrew v. Atwood*, 792 F.3d 118, 122 (D.C. Cir. 2015)

(quotation mark omitted).  In particular, Borda's request for "all grand jury records in the public

domain" related to his case appears to sweep more broadly than the five fact-specific search

terms the Criminal Division included in its synthesized search request.  The Department may be

correct that its search for *some* grand jury documents would have uncovered *all* responsive grand

jury documents, but, at this point, it has not demonstrated as much "beyond material doubt."

*DeBrew*, 792 F.3d at 122 (citation omitted).  The Court will, accordingly, deny summary

judgment as to this limited issue, and will permit the Department to file a renewed motion that

either explains how the prior search encompassed all of the relevant search terms or indicates

that the Department has engaged in a further search for possibly responsive records.

**B.      Withholdings and Segregability**

Borda also contends that the Department improperly withheld—in their entirety—four

plea agreements responsive to his November 4, 2013, FOIA request.  *See* Dkt. 31 at 6–11.  In its

*Vaughn* index, the Department describes the four plea agreements—all of which were "[f]iled"

or "[m]arked" "[u]nder [s]eal"—and invokes FOIA Exemptions 6, 7(C), and 7(D).[5]  *See* Dkt. 28-

4 at 28–31.  Although the *Vaughn* index asserts all three exemptions, the parties appear to agree

that the crux of the dispute turns on the Department's invocation and application of Exemption

7(D), *see* Dkt. 31 at 9–10; Dkt. 33 at 7–8, and, in particular, they agree that there is no need to

consider Exemption 6 separately, *see* Dkt. 28-2 at 13; Dkt. 31 at 6–7.  The Court concurs.

Because the Department compiled the withheld plea agreements for law enforcement purposes,

Exemption 7(C)'s "broader" protections necessarily apply to "all information that would fall

within the scope of Exemption 6."  *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir.

---

[5]  Borda does not appear to challenge the Department's redaction of the personal identifying
information of the "lower-level [g]overnment [e]mployees and other [t]hird [p]arties" from the
four plea agreements pursuant to Exemptions 6 and 7(C).  Dkt. 28-4 at 28–31; *see also* Dkt. 28-2
at 14–16; Dkt. 31 at 8–9.

2011).  Furthermore, because Borda makes identical arguments under both Exemptions 7(C) and

7(D), *compare* Dkt. 31 at 7–9 *with id.* at 9–11, and because "Exemption 7(D) is more expansive

than 7(C)," *Rosenberg v. U.S. Dep't of Immigration and Customs Enforcement*, 13 F. Supp. 3d

92, 110 (D.D.C. 2014), the Court need only consider Exemption 7(D).

Borda's objections to the Department's withholdings fall into two general categories.

First, he makes two threshold challenges to the Department's *invocation* of Exception 7(D),

arguing that the Department has failed to "establish that the persons named as parties in the

withheld plea agreements provided information" to the Department in a confidential capacity,

Dkt. 31 at 10, and that, even if they did, by providing "public testimony" as "witnesses [in

Borda's trial] on behalf of the" Department, they "waived" Exemption 7(D)'s protections, *id.* at

7–10.  Second, he raises two challenges to the Department's *application* of Exemption 7(D),

asserting that the Department has failed to demonstrate that the plea agreements—in their

entirety—fall within the exemption's ambit and that it has failed to show that there are no

reasonably segregable portions of the agreements that could be released to him.  *Id.* at 10–11.

The Court will consider each set of challenges in turn.

      1.  *Confidentiality and Waiver*

Exemption 7(D) permits a law enforcement agency to withhold information that "could

reasonably be expected to disclose the identity of a confidential source."  5 U.S.C.

§ 552(b)(7)(D).  "A source counts as confidential 'if the source provided information under an

express assurance of confidentiality or in circumstances from which such an assurance could

reasonably be inferred.'"  *Labow v. U.S. Dep't of Justice*, 831 F.3d 523, 530 (D.C. Cir. 2016)

(quoting *Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995)).  The Department "bears the

burden of proving that [Exemption 7(D)] applies," and it is "not enough for the agency to claim

that all sources providing information in the course of a criminal investigation do so on a confidential basis." *Id.* at 531 (quotation marks omitted).  Rather, when an agency asserts that a source has "provided information . . . under *implied* assurances of confidentiality," Dkt. 28-3 at 12 (Cunningham Decl. ¶ 27)—as the Department does here—the Court must consider that contention in light of "four factors," including "the character of the crime at issue," the "source's relation to the crime," and "whether the source has an ongoing relationship with the law enforcement agency,"[6] *Labow*, 831 F.3d at 531 (quotation mark omitted).

Borda argues that the Department has not carried its burden "to establish" that any of the "persons named as parties in the withheld plea agreements provided information" subject to implied assurances of confidentiality.  Dkt. 31 at 10.  The Court disagrees.  As Cunningham explains in his declaration, the "individuals identified in [the withheld plea agreements] provided specific and detailed information" about an extended criminal investigation, and "in doing so, have placed themselves in harm's way should their cooperation with/participation in the investigation, indictment[,] and trial of [Borda] become publicly known."  Dkt. 28-3 at 12 (Cunningham Decl. ¶ 27).  Cunningham further attests that, "[g]iven the nature of the offenses committed by [Borda]," the Department "has legitimate cause to conclude that the disclosure of the identity of a cooperating individual could subject [that individual] to reprisal" and "could have disastrous consequences."  *Id.*  If the sources would suffer "harm," "reprisal," and "disastrous consequences" from the disclosure of their identities, as the evidence shows, it is reasonable to infer they provided information to the Department with the expectation that their personal information would remain confidential.  Notably, the crime for which Borda was

---

[6]  The Court lacks sufficient information to assess the fourth factor—"whether the source received payment"—but the Court notes that this factor "is not itself dispositive." *Labow*, 831 F.3d at 531, 532.

charged and convicted—"[c]onspiracy to distribute . . . [c]ocaine into the United States," Dkt. 28-4 at 5—is one that the D.C. Circuit has characterized as particularly "violen[t] and danger[ous]," and, in this context, it is reasonable for informants to "fear reprisal by conspirators to distribute cocaine" due to their "penchant for violence," *Mays v. DEA*, 234 F.3d 1324, 1329–30 (D.C. Cir. 2000). The Court, accordingly, concludes that the Department has carried its burden of showing that the individuals identified in the plea agreements were confidential sources.

Borda's primary argument, however, is that, even if these individuals acted as confidential sources at one point, by providing "public testimony" at Borda's trial, they "in effect waived" Exemption 7(D)'s protections. Dkt. 31 at 8–10. Even putting aside the fact that the Department's *Vaughn* index indicates that one of the four defendants testified at Borda's trial "using a pseudonym," *see* Dkt. 28-4 at 31, Borda's argument is foreclosed by the D.C. Circuit's opinion in *Parker v. Department of Justice*, 934 F.2d 375 (D.C. Cir. 1991). In *Parker*, the Court of Appeals considered, and rejected, the same argument Borda raises here—that the Department's "informants waived the confidential status [afforded to them under Exemption 7(D)] to the extent that they [had] testified" at the plaintiff's trial. *Id.* at 379. Agreeing with the First Circuit's "persuasive" decision rejecting the waiver argument in *Irons v. FBI*, 880 F.2d 1446 (1st Cir. 1989) (en banc), the D.C. Circuit observed that "the language of the Exemption . . . says nothing at all about waiver;" explained that "the extensive legislative history of Exemption 7(D) indicates that Congress intended [that courts] interpret the [exemption] literally;" and, accordingly, "reject[ed] [the plaintiff's] claim that the FBI waived its Exemption 7(D) protection." *Parker*, 934 F.2d at 380–81; *see also id.* at 379 ("[C]ourts considering this argument have agreed that a government agency is not required to disclose the identity of a

confidential source . . . notwithstanding the possibility that the informant may have testified at a public trial.").  It is, accordingly, well settled that "[c]onfidentiality is not lost merely because a source becomes a government witness."  *Petrucelli v. Dep't of Justice*, 106 F. Supp. 3d 129, 134 (D.D.C. 2015); *see also, e.g.*, *Cobar v. U.S. Dep't of Justice*, 81 F. Supp. 3d 64, 73–74 (D.D.C. 2015) ("[P]ublic testimony by 'confidential sources' does not waive the FBI's right to invoke Exemption 7(D) to withhold the identity of a confidential source."); *Bullock v. FBI*, 577 F. Supp. 2d 75, 80 (D.D.C. 2008) ("[E]ven if the identity of the confidential source was revealed at the trial, . . . Exemption 7(D) still applies.").

Borda offers no basis for the Court to stray from *Parker*'s holding.  To the extent any of the individuals identified in the plea agreements provided public testimony, doing so did not waive the Department's ability to invoke Exemption 7(D) to shield disclosure of their identities. Accordingly, the Court will grant the Department's motion for summary judgment as to its invocation of Exemption 7(D) to withhold the names of the individuals identified in the four plea agreements, as well as any additional information contained in the agreements that might reasonably disclose their identities.

2.   *Withholdings and Segregability*

Borda also challenges the Department's application of Exemption 7(D) to withhold the four plea agreements in full, arguing that the Department has not demonstrated that the entirety of the multi-page agreements are exempt from disclosure, and alleging that the Department failed to assess whether there was any non-exempt information in the agreements that could have been reasonably segregated and disclosed.  Dkt. 31 at 10–11.  The Court agrees that, at this point in

the proceedings, the Department has not demonstrated that it is entitled to withhold the four plea agreements in their entirety.

"Exemption 7(D) protects two distinct types of information: (1) information [that] 'could reasonably be expected to disclose the identity of a confidential source;' and (2) 'information furnished by a confidential source.'" *Cobar*, 81 F. Supp. 3d at 72 (quoting 5 U.S.C. § 552(b)(7)(D)). Information merely "'relate[d]' to a confidential source" does not fall within the exemption's protections. *Id.* at 76. FOIA, moreover, "requires the government to make public any non-exempt material that is 'reasonably segregable' from a record that is otherwise legitimately withheld." *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 577–78 (D.C. Cir. 1996) (quoting 5 U.S.C. § 552(b)). If, as here, the government seeks to withhold responsive records in full, it "has the 'burden of demonstrating that no reasonably segregable information exists within [the] documents withheld.'" *Loving v. Dep't of Defense*, 550 F.3d 32, 41 (D.C. Cir. 2008) (quoting *Army Times Pub. Co. v. Dep't of the Air Force*, 998 F.2d 1067, 1068 (D.C. Cir. 1993)).

Although the Department may redact from the four plea agreements the names of its confidential sources, any other information that might potentially identify them, and any information they furnished, the Department has not explained how Exemption 7(D)—or any other exemption—permits it to withhold the agreements in their entirety.[7] The Department's *Vaughn* index notes that the four plea agreements range in length from eleven to eighteen pages, Dkt. 28-4 at 28–31, but it identifies only a handful of paragraphs that "reference the named Defendant's cooperation with" the Department, *see id.* The Department makes no attempt to

---

[7] As noted above, the Department may also withhold material reflecting the names and identifying information of any government employees or other third-parties pursuant to Exemptions 6 and 7(C). *See supra* n.5.

explain why the remaining paragraphs should be withheld, nor is an explanation evident to the

Court.  It is unlikely, for example, that an entire plea agreement—including the type of

boilerplate terms commonly included in plea agreements—represents information identifying or

furnished by a confidential source.  *See Cobar*, 81 F. Supp. 3d at 76 (noting that the "generic

conditions set forth in [a] [c]onfidential [s]ource [a]greement" do not "qualify for protection

under Exemption 7(D)").  In any event, "[i]t is the government that bears the burden of justifying

the non-disclosure of records," *Shapiro v. U.S. Dep't of Justice*, 153 F. Supp. 3d 253, 287

(D.D.C. 2016), and it has not yet carried that burden.

Nor has the Department shown that it is impractical to segregate the non-exempt material

from the material that is exempt.  "It has long been a rule in this Circuit that non-exempt portions

of a document must be disclosed unless they are inextricably intertwined with exempt portions,"

*Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) (quoting *Mead Data

Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)), or unless, after

redactions, the remaining information would constitute merely "meaningless set[s] of words and

phrases," *Mead*, 566 F.2d at 261.  The Department, however, asserts only that the "withheld

records . . . are not segregable without revealing the protected information" and that "no

meaningful portion . . . could be released without triggering foreseeable harm to one or more of

the interests protected by" the FOIA exemptions it invokes.  Dkt. 28-3 at 13 (Cunningham Decl.

¶ 29).  These "conclusory statements offer th[e] Court no detail as to the defendant's inability to

segregate" potentially non-exempt boilerplate plea agreement language "from the exempt

material."  *Carter, Fullerton & Hayes LLC v. FTC*, 520 F. Supp. 2d 134, 1147 (D.D.C. 2007).

The Department may be correct that none of the four plea agreements is reasonably segregable,

but the Court needs more information before determining whether the Department has done all that it can.

Accordingly, the Court will deny summary judgment to the extent that the Department has failed to explain why non-exempt *portions* of the plea agreements cannot be released.  The Department may file a renewed motion, declaration, and *Vaughn* index addressing these and any related issues.[8]  In addition, the Court will order the Department to produce unredacted versions of Documents 1–4 for *ex parte*, *in camera* review at the same time that the Department files a renewed motion.

## CONCLUSION

For these reasons, the Court will **GRANT** in part and **DENY** in part the Department's renewed motion for summary judgment, Dkt. 28.

A separate Order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  March 28, 2017

---

[8]  The Department repeatedly notes that the four plea agreements were "filed under seal and are not publicly accessible court records," Dkt. 28-3 at 7 (Cunningham Decl. ¶ 17); *accord* Dkt. 33-1 at 8 (Second Cunningham Decl. ¶ 17), but provides no information about the circumstances under which those agreements were sealed or whether, and to what extent, the seal remains in place.  Because sealed documents are not categorically exempted from disclosure under FOIA, *see Morgan v. U.S. Dep't of Justice*, 923 F.2d 195, 197–98 (D.C. Cir. 1991), if the Department intends to rely on the sealed-status of the records in its renewed motion, it will need to demonstrate that the seal was issued "with the intent to prohibit the [Department] from disclosing the [plea agreements] as long as the seal remains in effect," *id.* at 198.