# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CHRISTIAN BORDA,

        *Plaintiff,*

   v.

U.S. DEPARTMENT OF JUSTICE,
CRIMINAL DIVISION,

        *Defendant.*

Civil Action No. 14-229 (RDM)

## MEMORANDUM OPINION

This matter is currently before the Court on Defendant Department of Justice's third motion for summary judgment, Dkt. 40, and Plaintiff Christian Borda's motion for leave to file a second amended complaint, Dkt. 44. Borda seeks disclosure under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a, of records pertaining to grand jury proceedings within this district, as well as records relating to his 2010 conviction for conspiracy to commit a narcotics offense. For the reasons explained below, the Court will **GRANT** Defendant's motion for summary judgment and will **DENY** Borda leave to file a second amended complaint.

## I. BACKGROUND

The underlying facts of this case have been relayed in the Court's previous opinions. *See Borda v. Exec. Office for the U.S. Attorney* ("*Borda I*"), 125 F. Supp. 3d 196 (D.D.C. 2015); *Borda v. U.S. Dep't of Justice, Criminal Division* ("*Borda II*"), 245 F. Supp. 3d 52 (D.D.C. 2017). In brief: Borda made three FOIA requests in 2013. *Borda II*, 245 F. Supp. 3d at 55. The Executive Office for United States Attorneys ("EOUSA") did not respond, and Borda filed suit.

*Id.* EOUSA then conducted an initial search, revealing no responsive records, Dkt. 28-3 at 3–4 (Cunningham Decl. ¶ 8), and moved for summary judgment, Dkt. 10. Borda did not oppose EOUSA's motion, instead moving to amend his complaint. Dkt. 20. The Court denied the motion for summary judgment because no other components of the Department of Justice had conducted searches, and the Court granted Borda's motion for leave to amend his complaint. *See Borda I*, 125 F. Supp. 3d at 199–200. After Borda filed his amended complaint (adding a challenge to an EOUSA response to a 2015 records request), Dkt. 22, EOUSA forwarded his inquiries to the Criminal Division of the Department of Justice. The Criminal Division performed a search, released some responsive records to Borda while withholding others, Dkt. 28-3 at 5–7 (Cunningham Decl. ¶¶ 13–17), and EOUSA then filed another motion for summary judgment, Dkt. 28.

In *Borda II*, the Court substituted the Department of Justice as the proper defendant, 245 F. Supp. 3d at 52 n.1, and granted in part and denied in part the Department's motion for summary judgment, *id.* at 63. The Court held that summary judgment was inappropriate as to one aspect of the adequacy of the search and as to whether the Department had properly applied Exemption 7(D) to four sealed plea agreements. With respect to the former, "[t]he Department ha[d] not adequately explained how its decision to consolidate Borda's four FOIA requests into a single 'search request'—to the exclusion of at least some of Borda's specific search terms, *see* Dkt. 31 at 5—was 'reasonably calculated to uncover all relevant documents.'" *Borda II*, 245 F. Supp. 3d at 59 (quoting *DeBrew v. Atwood*, 792 F.3d 118, 122 (D.C. Cir. 2015)). The Court noted in particular that "Borda's request for 'all grand jury records in the public domain' related to his case appears to sweep more broadly than the five fact-specific search terms the Criminal Division included in its synthesized search request." *Id.* The Court, accordingly, denied

summary judgment on "this limited issue, and . . . permit[ted] the Department to file a renewed motion that either explains how the prior search encompassed all of the relevant search terms or indicates that the Department has engaged in a further search for possibly responsive records." *Id.* With respect to the four plea agreements, the Court held that "the Department ha[d] not explained how Exemption 7(D)—or any other exemption—permits it to withhold the agreements in their entirety. . . . Nor ha[d] the Department shown that it [was] impractical to segregate the non-exempt material from the material that [was] exempt." *Id.* at 62. Although the Department had also argued that the plea agreements were exempt from disclosure because they were sealed, the Court observed that "sealed documents are not categorically exempted from disclosure under FOIA," and thus, "if the Department intends to rely on the sealed-status of the records in its renewed motion, it will need to demonstrate that the seal was issued 'with the intent to prohibit the [Department] from disclosing the [plea agreements] as long as the seal remains in effect.'" *Id.* at 63 n.8 (quoting *Morgan v. U.S. Dep't of Justice*, 923 F.2d 195, 198 (D.C. Cir. 1991)). The Court also ordered the Department to produce the disputed plea agreements for *in camera* review. *Id.* at 63.

On June 9, 2017, the Department moved for summary judgment (the third such motion filed by the government in this case) and produced (1) a supplemental declaration describing the additional search efforts undertaken in response to *Borda II* and the rationale for withholding in full the eleven responsive documents those efforts produced; (2) correspondence with the district court judges who sealed the plea agreements that previously had been withheld in full; and (3) the plea agreements themselves for *in camera* review. *See* Dkt. 40. The Court then advised Borda of the consequences of failing to respond to the motion for summary judgment and ordered him to file a response on or before July 24, 2017. *See* Dkt. 41. Borda moved for an

extension of time to respond on July 28, 2017, Dkt. 43, which the Court granted, Minute Order

(Aug. 3, 2017). On August 17, 2017, Borda filed a second motion for leave to amend his

complaint. *See* Dkt. 44. The Court again instructed Borda of the consequences of not

responding to Defendant's motion for summary judgment and specifically "cautioned" him "that

he should not assume that his [motion to amend] will be granted." Minute Order (Sept. 5, 2017).

Borda still has not filed a response.

## II. LEGAL STANDARD

### A. Motion to Amend

A party may amend its complaint "once as a matter of course within . . . 21 days after

serving it, . . . 21 days after service of a responsive pleading[,] or 21 days after service of a

motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). Thereafter, a

party may only amend "with the opposing party's written consent or the court's leave." Fed R.

Civ. P. 15(a)(2). Although courts "should freely give leave [to amend] when justice so requires,"

*id.*, that latitude does not extend to cases involving "undue delay, bad faith or dilatory motive on

the part of the movant, repeated failure to cure deficiencies by amendments previously allowed,

undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of

amendment," *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### B. Motion for Summary Judgment

The Freedom of Information Act is premised on the notion that an informed citizenry is

"vital to the functioning of a democratic society, needed to check against corruption and to hold

the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214,

242 (1978). It thus mandates that an agency disclose records on request, unless they fall within

one of nine exemptions. "These exemptions are explicitly made exclusive and must be narrowly

construed." *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011) (internal quotation marks and citation omitted). As relevant here, Exemption 3 protects information "specifically exempted from disclosure by statute . . . if that statute . . . requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or . . . establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). Exemption 5 covers "inter-agency or intra-agency memorand[a] or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(3).

FOIA cases are typically resolved on motions for summary judgment under Federal Rule of Civil Procedure 56. *See, e.g.*, *Shapiro v. U.S. Dep't of Justice*, 153 F. Supp. 3d 253, 268 (D.D.C. 2016). To prevail on a summary judgment motion, the moving party must demonstrate that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In a FOIA action, the agency may meet its burden by submitting "relatively detailed and non-conclusory" affidavits or declarations, *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)), and an index of the information withheld, *Vaughn v. Rosen*, 484 F.2d 820, 827–28 (D.C. Cir. 1973); *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998). The Court reviews the agency's decision *de novo*, and the agency bears the burden of sustaining its action. 5 U.S.C. § 552(a)(4)(B).

## III. ANALYSIS

The Court first addresses Borda's motion to amend his complaint. It then considers the adequacy of Defendant's supplemental search, before turning to the decision to withhold in full

both the four plea agreements previously at issue and the eleven responsive documents located in the course of the Department's supplemental search. Although Borda has failed to respond to Defendant's motion for summary judgment, the Court "must always engage in the analysis required by Rule 56 before acting on a motion for summary judgment." *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 506 (2016).

## A. Motion to Amend

Borda filed his original complaint on February 18, 2014. Dkt. 1 at 1. That complaint challenged EOUSA's response to three records requests submitted on November 4, November 5, and November 20, 2013. *Borda I*, 125 F. Supp. 3d at 197. After EOUSA moved for summary judgment, Dkt. 10, Borda sought leave to amend his complaint on June 5, 2015, Dkt. 20 at 1. The Court granted Borda's motion on August 28, 2015. *Borda I*, 125 F. Supp. 3d at 196. The amended complaint added a claim contesting EOUSA's response to a records request Borda had filed on March 24, 2015. *Borda II*, 245 F. Supp. 3d at 55 n.2. On August 17, 2017, Borda filed the motion to amend currently pending before the Court. Dkt. 44 at 1. That motion seeks leave to amend Borda's complaint a second time to add challenges to EOUSA's response to two additional records requests. *Id.* at 2. These requests were submitted on September 27, 2014, and October 3, 2014. Dkt. 44-1 at 15, 19; *see also* Dkt. 44 at 2.

The Department opposes Borda's motion on several grounds. First, it argues that he "has unduly delayed seeking to add his claims concerning the [a]dditional FOIA [r]equests," because the requests were sent in late 2014—that is, more than six months before Borda successfully sought leave to amend his complaint in June 2015 to add a request filed *after* the two requests he now seeks to incorporate. Dkt. 46 at 4. Second, the Department argues that it would be substantially prejudiced by the proposed amendment because of the considerable work involved

in preparing a summary judgment motion in a FOIA case, an effort that would then need to be undertaken a fourth time. *Id.* at 4–5. Finally, the Department asserts that further amendment of the complaint would significantly delay the resolution of this matter by necessitating a renewed round of briefing despite the limited scope of the issues currently before the Court. *Id.* at 5.

Borda has not filed a reply brief, but his motion for leave to amend arguably anticipated at least portions of the Department's opposition by noting that he had referred to the September and October 2014 FOIA requests in an earlier pleading in this litigation. Dkt. 44 at 2 (noting references to the September and October 2014 requests at Dkt. 31 at 21–22, 24). That earlier pleading—Borda's opposition to the Department's second motion for summary judgment— argued that the Department was not entitled to summary judgment because the Department had not shown that it had "searched for and reviewed any of the documents/information described in" Borda's September and October 2014 FOIA requests. Dkt. 31 at 4. At the same time, however, Borda conceded that the first amended complaint had "failed to include any allegations of agency non-compliance with respect to" the two FOIA requests submitted in late 2014. *Id.* at 13 n.2. In light of that significant problem, Borda noted that he "intend[ed] to seek leave of the Court to file a [s]econd [a]mended [c]omplaint in order to" address these deficiencies. *Id.* On March 28, 2017, the Court held that "[b]ecause Borda's operative complaint does not challenge the Department's response to [the September and October 2014] FOIA requests, he cannot, for the first time, attack the sufficiency of the Department's response by way of his opposition brief." *Borda II*, 245 F. Supp. 3d at 57 (citing *Singh v. District of Columbia*, 55 F. Supp. 3d 55, 70 (D.D.C. 2014)). Borda then filed his motion for leave to file a second amended complaint on August 17, 2017. Dkt. 44.

"[U]ndue delay is a sufficient reason for denying leave to amend." *Atchinson v. District of Columbia*, 73 F.3d 418, 426 (D.C. Cir. 1996). Courts should, however, "generally take into account the actions of other parties and the possibility of any resulting prejudice." *Id.* A delay of several years between the filing of the initial action and the request to amend is generally undue and suggests prejudice to the defendant. *See id.* at 427 (delay of two years from filing of action undue); *Brown v. FBI*, 744 F. Supp. 2d 120, 123 (D.D.C. 2010) (delay of two years undue); *Hoffmann v. United States*, 266 F. Supp. 2d 27, 33 (D.D.C. 2003) (delay of five years from time "plaintiffs concede[d] that they had at their disposal all the facts necessary to raise the claims raised for the first time here" undue). The reason for the delay is also relevant to the determination of whether leave to amend should be granted, *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 247–48 (D.C. Cir. 1987) (affirming denial of leave to amend when plaintiff had "offered no explanation for its tardiness" and "had abundant opportunity" to previously "raise the issue"); *James Madison Proj. v. Dep't of Justice*, 208 F. Supp. 3d 265, 280 (D.D.C. 2016) (delay of approximately six months after being put on notice that complaint did not reflect all requests was undue because "Plaintiff provide[d] no reason for th[e] delay"), as is whether the proposed amendment would add additional factual allegations or merely "clarify legal theories or make technical corrections," *Harrison v. Rubin*, 174 F.3d 249, 253 (D.C. Cir. 1999) ("Although this Circuit has recognized undue delay as a basis for denying a motion to amend, we have done so only where plaintiffs sought to add new factual allegations."). With respect to prejudice more specifically, whether considered independently or in concert with the question of undue delay, courts have acknowledged that the "considerable time and effort briefing summary judgment on the issues presented in" a FOIA case weighs against granting leave to amend after that briefing has begun. *James Madison Proj.*, 208 F. Supp. 3d at 280; *see*

*also Sai v. Transp. Sec. Admin.*, 155 F. Supp. 3d 1, 7–8 (D.D.C. 2016) (denying leave to file a supplemental pleading adding new FOIA requests because their addition "would merely result in undue delay in the disposition of this case and would not enhance judicial efficiency"); *Brown*, 744 F. Supp. 2d at 123.

These considerations counsel against granting Borda leave to amend his complaint a second time. Borda fails to offer any explanation for why the September and October 2014 FOIA requests were not included in his first amended complaint, which was filed many months later in June 2015. Dkt. 20; *see also* Dkt. 31 at 13 n.2 (noting that the requests were omitted for "unknown" reasons). Borda also does not dispute that he then possessed the records he now submits as evidence of having submitted the September and October 2014 requests. The delay here, moreover, is substantial. Forty-two months elapsed from when Borda filed this suit to when he sought leave to amend the complaint for a second time to add substantial, new allegations, and he could easily have sought leave to amend long before he did so. Indeed, even giving him the benefit of the doubt and assuming that he was unaware that the September and October 2014 FOIA requests were not included in his first amended complaint at the time it was filed, he recognized that omission in his opposition to the Department's second motion for summary judgment, which was filed in early April 2016, and he indicated at that time that he would seek leave to file a second amended complaint. Dkt. 31 at 13 n.2. He did not do so, however, until August 2017—over sixteen months later. *Compare* Dkt. 31 at 1, *with* Dkt. 44 at 1.

In short, there is no reason why Borda could not have included his allegations regarding the September and October 2014 FOIA requests in his first amended complaint; he failed to demonstrate due diligence in seeking to correct this omission when it came to his attention; and

adding these additional allegations now would delay the resolution of this case, which has been pending for over four years and which has already generated three rounds of briefing on summary judgment. Although leave to amend must be freely granted, there are limits to that principle. Borda's motion for leave to amend not only tests those limits, but exceeds them. *See* Fed. R. Civ. P. 1 (admonishing courts and parties to apply the rules "to secure the just, speedy, and inexpensive determination of every action").

The Court will, accordingly, deny Borda's motion for leave to file a second amended complaint.

**B.      Motion for Summary Judgment**

1. *Adequacy of the Department's Supplemental Search for Responsive Records*

FOIA requires agencies to demonstrate that they have "conduct[ed] a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Reporters Comm. for Freedom of Press v. FBI*, 877 F.3d 399, 400 (D.C. Cir. 2017) (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). To prevail on summary judgment, an "agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Id.* at 402 (quoting *Oglesby*, 920 F.2d at 68). It can meet this burden, moreover, "by submitting '[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'" *Id.* (quoting *Oglesby*, 920 F.2d at 68). Borda has not objected to the adequacy of the Department's search for records, but the Court nevertheless considers whether the Department has remedied the deficiencies in its previous searches identified in *Borda II*. There, the Court held:

> The Department has not adequately explained how its decision to consolidate Borda's four FOIA requests into a single "search request"—to the exclusion of at least some of Borda's specific search terms—was reasonably calculated to uncover all relevant documents. In particular, Borda's request for "all grand jury records in the public domain" related to his case appears to sweep more broadly than the five fact-specific search terms the Criminal Division included in its synthesized search request.

*Borda II*, 245 F. Supp. 3d at 59 (internal quotation marks and citation omitted).

In response, the Department expanded its search and has now submitted a revised declaration from John E. Cunningham III, a trial attorney at the Department's Criminal Division assigned to the Freedom of Information Act and Privacy Act Unit. Dkt. 40-1 at 1 (Third Cunningham Decl. ¶ 1). The Third Cunningham Declaration explains that the Department has since returned to the set of files associated with Borda's case and searched for any "grand jury material specifically related to the *Borda* criminal investigation and prosecution." *Id.* at 8 (Third Cunningham Decl. ¶ 18). By expanding its search beyond the five fact-specific terms that it previously employed to a search looking for any grand jury material related to Borda's case, the Department has remedied the sole deficiency the Court identified with respect to the search.

The Court, accordingly, concludes that the Department has conducted a search "reasonably calculated to uncover all relevant documents," *DeBrew*, 792 F.3d at 122, and will grant Defendant's motion for summary judgment as to the adequacy of the search.

2. *Withholding in Full of Responsive Records*

a. Sealed Plea Agreements

The Department's initial search identified four plea agreements responsive to Borda's requests, which it refers to as Documents One, Two, Three, and Four. Dkt. 40-1 at 8–9 (Third Cunningham Decl. ¶ 19). These plea agreements have been withheld in full on the ground that they remain sealed by the judges who accepted the pleas. *Id.* at 9 (Third Cunningham Decl. ¶ 20). In *Borda II*, however, the Court observed that, by "repeatedly not[ing] that the four plea

agreements were filed under seal and are not publicly accessible court records, but provid[ing] no information about the circumstances under which those agreements were sealed or whether, and to what extent, the seal remains in place," the Department failed to justify withholding the records.  245 F. Supp. 3d at 63 n.8 (internal quotation marks and citations omitted).

As the D.C. Circuit has explained, sealed documents are not categorically exempt from disclosure under FOIA.  *See Morgan v. U.S. Dep't of Justice*, 923 F.2d 195, 197 (D.C. Cir. 1991).  Instead, "the proper test for determining whether an agency improperly withholds records under seal is whether the seal . . . *prohibits* the agency from disclosing the records."  *Id.*  To determine whether "the court issued the seal with the intent to prohibit the [Department] from disclosing the [records] as long as the seal remains in effect," the Department may "refer[] to, *inter alia*: (1) the sealing order itself; (2) extrinsic evidence, such as transcripts and papers filed with the sealing court, casting light on the factors that motivated the court to impose the seal; (3) sealing orders of the same court in similar cases that explain the purpose for the imposition of the seals; or (4) the court's general rules or procedures governing the imposition of seals."  *Id.* at 198.  In the event that such evidence still does not reveal "the scope and effect of the seal," an agency "may need to seek a clarification from the court that issued the seal."  *Id.*

The Department has now submitted documentation from each of the judges who originally sealed the four plea agreements regarding the status and intent of those sealing orders. Three letters were submitted as exhibits to the Department's renewed motion for summary judgment.  Each verifies that the relevant plea agreement remains under seal and may not be disclosed.  *See* Dkt. 40-1 at 70 (letter from Judge Rosemary M. Collyer stating that "Document Three on the Criminal Division's *Vaughn* Index . . . reflects a plea that necessarily remains under seal"); *id.* at 72 (letter from Judge John D. Bates stating that another of the four plea agreements

"is under court seal and that the seal prohibits the Department of Justice from disclosing the Plea Agreement in response to a FOIA request"); *id.* at 74 (letter from Judge Gladys Kessler stating that another of the four plea agreements remains "the subject of a court seal"). The final response was issued as a sealed order by the judge who accepted the plea. *Id.* at 9 (Third Cunningham Decl. ¶ 20). The Department has provided the Court with a copy of this sealed order for *in camera* review, and the order verifies that the original sealing order in that case prohibits any disclosure of the agreement. *See id.* (Third Cunningham Decl. ¶ 20) (stating that the sealed order "confirmed that the . . . plea agreement[] . . . remain[s] under seal").

Because the Department has "obtain[ed] a clarifying order [or letter] stating that the seal prohibits disclosure" of each of the plea agreements withheld in full, the Department "is obviously entitled to summary judgment." *Morgan*, 923 F.2d at 198.

### b. Documents Located in Supplemental Search

The supplemental search undertaken by the Department identified eleven additional responsive records, labeled as Documents Five through Fifteen. Dkt. 40-1 at 8–9 (Third Cunningham Decl. ¶ 19). Each of these documents was withheld in full. *Id.* (Third Cunningham Decl. ¶ 19). Documents Five, Six, Seven, and Eight are grand jury transcripts. *Id.* (Third Cunningham Decl. ¶ 19). Document Nine is a single page of handwritten notes. Dkt. 40-1 at 53–54. Document Ten is a PowerPoint presentation that was used as an exhibit before the grand jury. *Id.* at 54. Documents Eleven and Twelve are memoranda produced in conjunction with Borda's criminal prosecution. *Id.* Document Thirteen is a proposed indictment sent from a trial attorney to his or her supervising attorneys. *Id.* at 55. Document Fourteen "is a draft affidavit which was prepared either by the DEA case agent or [a trial attorney]" that "contains references to confidential sources who contributed to the investigation and prosecution of Borda and his co-

defendants." *Id.* (emphasis omitted). Finally, Document Fifteen consists of "[t]yped and handwritten notes prepared by an unidentified [trial attorney] which relate to the investigation and prosecution of Borda and his co-defendants." *Id.* at 56 (emphasis omitted).

The Department has submitted, in addition to the Third Cunningham Declaration, a *Vaughn* Index identifying the author, recipient, and date of each of these eleven documents (if available), along with a description of both the record and the exemptions invoked to withhold it. *See* Dkt. 40-1 at 48–56. At times, the Third Cunningham Declaration asserts that more than one exemption would independently suffice to justify the complete withholding of a document. When the Court concludes that a single exemption is sufficient to justify withholding a document in full, it limits its discussion to that exemption and does not the reach the availability of the additional exemptions invoked.

The Court first addresses Documents Five through Eight. Each of these records is a grand jury transcript, *id.* at 8–9 (Third Cunningham Decl. ¶ 19), and has been withheld in full under Exemption 3, *id.* at 10–11 (Third Cunningham Decl. ¶¶ 22–24). In relevant part, Exemption 3 protects information that is "specifically exempted from disclosure by statute . . . if that statute . . . requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue." 5 U.S.C. § 552(b)(3). The Department argues that "Rule 6(e) of the Federal Rules of Criminal Procedure . . . does not permit discretion to disclose grand jury material," and thus "qualifies as a non-disclosure statute under the first prong of Exemption 3." Dkt. 40-1 at 10–11 (Third Cunningham Decl. ¶ 23). The Court agrees with both the general proposition and its application to the transcripts at issue here. The D.C. Circuit has held that Rule 6(e)'s "ban on disclosure is for FOIA purposes absolute and falls within [the first subpart] of Exemption 3." *Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d

856, 868 (D.C. Cir. 1981). Grand jury transcripts, moreover, are the prototypical grand jury

material exempt from disclosure under Rule 6(e), and are thus protected from disclosure by

Exemption 3. *Id.* at 869; *Boyd v. Exec. Office for U.S. Attorneys*, 87 F. Supp. 3d 58, 83 (D.D.C.

2015) ("Although Exemption 3 and Rule 6(e) do not protect any and all information which has

reached the grand jury chambers from disclosure, grand jury testimony is precisely the type of

information that the provision is designed to protect." (internal quotation marks and citation

omitted)). The Court, accordingly, concludes that the Department has properly withheld in full

Documents Five through Eight.

The remaining documents fall less obviously within the scope of Rule 6(e) and

Exemption 3. Although the Third Cunningham Declaration contains greater detail, the *Vaughn*

Index entries for Documents Nine, Eleven, Twelve, Fourteen, and Fifteen contain no mention of

any connection to grand jury proceedings, despite the Department's assertion that Exemption 3

justifies the complete withholding of each of those records. Dkt. 40-1 at 53–56. The *Vaughn*

Index, in contrast, describes Document Ten as a PowerPoint Presentation "marked Grand Jury

Exhibit 1, [which] relates to the investigation, indictment and prosecution of Borda and his co-

defendants." *Id.* at 54 (emphasis omitted). The index also notes the specific grand jury to which

this document was presented. *Id.* The D.C. Circuit has held that even "potential documentary

exhibits" presented to the grand jury are covered by Exemption 3, except in situations "where

documentary information coincidentally before the grand jury would be revealed in such a

manner that its revelation would not elucidate the inner workings of the grand jury." *Fund for

Constitutional Gov't*, 656 F.2d at 869–70. The PowerPoint at issue here is sought "from an

entity whose possession of that information is directly linked to its role relating to the grand jury

investigations." *Id.* at 870.  The Court, accordingly, concludes that the Department has properly withheld Document Ten in full.

The Department has also properly withheld in full Document Thirteen, "a proposed" or "draft" indictment in Borda's criminal case, Dkt. 40-1 at 55; *id.* at 10 (Third Cunningham Decl. ¶ 22).  The draft indictment contains and refers to information and testimony that "would have been presented or occurred before the grand jury investigating the criminal activities of the Plaintiff and his co-defendants." *Id.* at 8–10 (Third Cunningham Decl. ¶ 19, 22).  That is "precisely the information that Rule 6(e) is intended to protect—information that 'would tend to reveal some secret aspect of the grand jury's investigation.'" *Judicial Watch, Inc. v. Nat'l Archives & Records Admin.*, 214 F. Supp. 3d 43, 54 (D.D.C. 2016) (quoting *Senate of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574, 582 (D.C. Cir. 1987)).  This determination, moreover, is in accord with the conclusions of those courts previously considering whether draft indictments may be withheld in full under Exemption 3.  *See Judicial Watch*, 214 F. Supp. 3d at 54; *Boehm v. FBI*, 948 F. Supp. 2d 9, 27 (D.D.C. 2013); *Aleman v. Shapiro*, No. 85-3313, 1987 WL 10872, at *1 (D.D.C. May 5, 1987).

The Department asserts in the Third Cunningham Declaration that the remaining withheld materials "consist of documents and records concerning testimony and other related information which would have been presented or occurred before the grand jury investigating the criminal activities of the Plaintiff and his co-defendants."  Dkt. 40–1 at 10 (Third Cunningham Decl. ¶ 22).  That may be right, but the declaration offers few details regarding the connection of most of those records to the grand jury.  In light of this lack of detail, the Court declines to reach the question of whether Exemption 3 would justify the withholding of Documents Nine, Eleven,

Twelve, Fourteen, and Fifteen, and turns instead to Exemption 5, which the Department has also invoked with respect to the remaining documents.

Exemption 5 permits agencies to withhold "inter-agency or intra-agency memorand[a] or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Even when the documents at issue were produced during a criminal prosecution, the exemption "covers records that would be 'normally privileged in the civil discovery context.'" *Nat'l Ass'n of Criminal Def. v. Dep't of Justice*, 844 F.3d 246, 249 (D.C. Cir. 2016) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975)); *Williams & Connolly v. SEC*, 662 F.3d 1240, 1245 (D.C. Cir. 2011) ("[D]isclosure in criminal trials is based on different legal standards than disclosure under FOIA, which turns on whether a document would usually be discoverable in a civil case. Similar documents, in other words, are not—indeed must not be—treated similarly in the two different types of proceedings."). Exemption 5 thus "allows the government to withhold records from FOIA disclosure under . . . the attorney work-product privilege." *Nat'l Ass'n of Criminal Def.*, 844 F.3d at 249. That privilege offers "a working attorney . . . a zone of privacy within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories." *Id.* at 251 (internal quotation marks omitted). "Not every document created by a government lawyer, however, qualifies for the privilege (and thus, the exemption)." *Id.* Instead, the Court must make "a case-specific determination that a particular document in fact was prepared in anticipation of litigation before applying the privilege to government records." *Id.* (citing *Senate of Puerto Rico*, 823 F.2d at 586–87). To determine "whether a document was prepared in anticipation of litigation," the Court applies the "'because of' test, asking whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be

said to have been prepared or obtained because of the prospect of litigation." *Id.* (quoting *United States v. Deloitte LLP*, 610 F.3d 129, 137 (D.C. Cir. 2010)). This test means that "the attorney who created the document must have had a subjective belief that litigation was a real possibility and that subjective belief must have been objectively reasonable." *Id.* (internal quotation marks omitted). The D.C. Circuit has held that the work-product doctrine "should be interpreted broadly and held largely inviolate." *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 432 F.3d 366, 369 (D.C. Cir. 2005).

Exemption 5 straightforwardly covers the remaining documents because each was created during or in preparation for the criminal prosecution of Borda and his co-defendants. Document Nine consists of "handwritten notes containing references to witnesses and what the witness could be expected to testify about[] [and] an outline and/or overview of the criminal case, investigation and prosecution prepared for use in the grand jury." Dkt. 40-1 at 12 (Third Cunningham Decl. ¶ 28); *accord id.* at 53–54. Similarly, Document Fifteen contains "[t]yped and handwritten notes" that were prepared by a trial attorney assigned to Borda's criminal prosecution and "relate to the investigation and prosecution of Borda and his co-defendants." *Id.* at 56 (emphasis omitted). Documents Eleven and Twelve are "prosecution memos written by" a trial attorney on the prosecution team "seeking Section approval to proceed with an Indictment of the Plaintiff and his co-defendants." *Id.* at 10 (Third Cunningham Decl. ¶ 22). Both of these memoranda, moreover, are "incomplete" or "draft" versions. *Id.* at 54. Document Fourteen "is a draft affidavit which was prepared either by the DEA case agent or [a trial attorney]" that "contains references to confidential sources who contributed to the investigation and prosecution of Borda and his co-defendants." *Id.* (emphasis omitted). All of these materials "were prepared by or at the direction of an attorney . . . in anticipation of the prosecution of the Plaintiff and his

co-defendants" and "contain information constituting the legal analysis" of an attorney working on the prosecution, that attorney's "theory of the case being investigated and evaluation of the evidence," and the attorney's "assessments of facts and issues pertaining to the proposed Indictment of the Plaintiff and his co-defendants." *Id.* at 12–13 (Third Cunningham Decl. ¶¶ 29–30).

The Court, accordingly, concludes that Documents Nine, Eleven, Twelve, Fourteen, and Fifteen consist entirely of either "text concerning the mental impressions, conclusions, opinions, or legal theories of an attorney," or "factual materials prepared in anticipation of litigation," and thus were properly withheld in full under Exemption Five. *Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C. Cir. 1997) (internal quotation marks omitted). Through the Third Cunningham Declaration and the *Vaughn* Index, the Department has demonstrated that the case notes and prosecution memoranda in Documents Nine, Eleven, Twelve, and Fifteen contain the thought processes, opinions, and legal theories of the attorneys considering whether to prosecute Borda. Such materials are "precisely the type of information universally held to be attorney-work product," and thus are protected from disclosure under Exemption 5. *Heggestad v. U.S. Dep't of Justice*, 182 F. Supp. 2d 1, 11 (D.D.C. 2000) (holding that "prosecution memoranda . . . created as an integral part of the Tax Division's investigation and its decision-making process with regard to whether or not to prosecute" that "contain recommendations of the IRS, the United States Attorney and the Tax Division; review notes; and letters and memoranda concerning the handling of the case" were work product exempt from disclosure); *Boyd*, 87 F. Supp. 3d at 85 (holding that a "case initiation form" describing "various particulars regarding the Plaintiff's case" created "in the course of an investigation that was undertaken with litigation in mind" was entirely protected under Exemption 5 (citation omitted)). Although it is conceivable that the

prosecution memoranda, in particular, contain some factual or other background material beyond the legal analysis of the authoring attorneys, "[t]he circuit's case law is clear that the work-product doctrine simply does not distinguish between factual and deliberative material." *Judicial Watch*, 432 F.3d at 371 (internal quotation marks omitted). That means that "factual material is itself privileged when it appears within documents that are attorney work product," and "[i]f a document is fully protected as work product, then segregability is not required." *Id.*

Document Fourteen presents a slightly different question because the Department is unsure whether it was created by an attorney working on the case or a Drug Enforcement Agency ("DEA") Special Agent. In the event this document was in fact prepared by an attorney, it falls comfortably within Exemption 5 for the reasons stated above—that is, because it is a document created by an attorney "in the course of an investigation that was undertaken with" Borda's criminal prosecution in mind. *Boyd*, 87 F. Supp. 3d at 85 (quoting *SafeCard Servs.*, 926 F.2d at 1202). Even if the draft was in fact authored by a DEA agent, however, the work-product "doctrine protect[s] material prepared by agents for the attorney as well as those prepared by the attorney himself," *United States v. Nobles*, 422 U.S. 225, 238–39 (1975), and "[r]ecent cases have generally held that draft affidavits . . . are covered by the work-product rule," 8 Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2024 n.23, at 510 (3d ed. 2010); *see Clemmons v. Acad. for Educ. Dev.*, 300 F.R.D. 6, 7–8 (D.D.C. 2013) (collecting cases). Here, the draft affidavit was prepared "at the direction of an attorney . . . in anticipation of the prosecution of the Plaintiff and his co-defendants." Dkt. 40-1 at 12–13 (Third Cunningham Decl. ¶ 29). That makes it work product, and thus exempt from disclosure under Exemption 5. *See Miller v. U.S. Dep't of Justice*, 562 F. Supp. 2d 82, 114–15 (D.D.C. 2008) (holding that "a

draft affidavit supporting the request for plaintiff's extradition" was properly withheld under Exemption 5 as attorney work product despite unknown authorship of the affidavit).

## CONCLUSION

For these reasons, the Court will **GRANT** the Department's renewed motion for summary judgment, Dkt. 40, and will **DENY** Borda's motion to amend, Dkt. 44.

A separate order will issue.


/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  March 31, 2018